**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | **Criminal No. 05-69** |
| | ) | |
| KEVIN BONNER | ) | |

**MEMORANDUM OPINION**

**I.      Introduction**

Kevin Bonner is charged with possession with intent to distribute five grams or more of

cocaine base, in the form commonly known as "crack," in violation of 21 U.S.C. §§841(a) and

841(b)(1)(B)(iii).  Defendant has filed a motion to suppress the fruits of the warrantless search

and seizure performed on May 26, 2003, which he claims violated the Fourth Amendment.

Defendant also has filed a motion to compel the government to produce a confidential informant

in open court.  For the reasons stated below, both motions will be denied.

**II.      Factual Background**

The following facts were established at an evidentiary hearing held on November 7, 2005.

The Court, having observed the demeanor of the witnesses for the government and defendant,

finds the testimony of the police officers to be credible, consistent and supported by the objective

facts, and more believable than that of defendant's witnesses, and therefore resolves all

credibility disputes in favor of the government.

On May 26, 2003 at a few minutes before 6:50 pm, McKees Rocks police officer

Anthony Morris received a telephone call at the police station just before he was to begin his

shift on uniformed bicycle duty.  Officer Morris testified that a woman he referred to as "Jane

Doe," a confidential informant who had supplied reliable information of drug activity to him in the past, informed him that a black male named Kevin Bonner, who was wearing green work pants, a blue shirt and had his hair in cornrows, was selling crack cocaine in $50.00 units at Palermo's Bar on Chartiers Avenue in McKees Rocks, Allegheny County.  Jane Doe did not tell Officer Morris that she personally observed defendant in the bar selling crack.  In response, Officer Morris and Officer Andrew Pearl rode their bicycles to Palermo's Bar from the police station.  At 6:50 pm they arrived at Palermo's and entered the bar.

According to testimony from a defense witness, bartender Shelley Schuler, defendant arrived at Palermo's at approximately 6:25 pm.  From 6:25 pm until 6:50 pm, only defendant, Ms. Schuler, the cook, Charles Jones, and one customer, Darlene Taylor, were present inside Palermo's.  According to defendant and Ms. Schuler, defendant did not display or sell crack cocaine to anyone inside the bar, and between 6:25 pm and 6:50 pm, he was the only person in the bar to use a telephone.  Defendant and Ms. Schuler testified that no female used a telephone to call anyone during the approximately twenty five minutes defendant was in the bar.

Upon entering the bar, Officers Morris and Pearl testified that they saw defendant walk out of the ladies' restroom.  His appearance was consistent with Jane Doe's description of the man selling crack at Palermo's.  Officer Morris asked defendant if his name was Kevin Bonner, which defendant acknowledged.  Officer Morris then asked defendant to go outside with them to answer some questions, and he agreed and accompanied the officers outside without resistance or compulsion.  According to the testimony of all witnesses, defendant said or did nothing the entire time he was in the bar to indicate he possessed or intended to sell any controlled substance.

After exiting the bar, the three men stopped and Officer Morris informed defendant that

he had received a tip that he was selling crack.  Officer Morris asked defendant if he had

anything on him, at which point defendant said "fuck you" and ran.  Officers Morris and Pearl

gave chase, caught up with defendant and threw him to the ground, face first.  Each officer

testified that they asked defendant what he was doing, to which he responded: "I'm selling drugs.

What do you think?"

At that point according to Officers Pearl and Morris, defendant began to pull out a plastic

bag containing suspected crack cocaine from the rear pocket of his pants.  Officer Morris pulled

the bag completely out of defendant's pocket.  The bag contained 57 large pieces of crack

cocaine and one piece of cocaine in powder form.  Officer Morris removed cash in the amount of

$2,207 from defendant's left rear pocket as well.  Defendant denied that he ran or that he said he

was selling drugs.

### III.     Motion to Suppress Evidence (Document No. 26)

Police Officers Pearl and Morris had reasonable suspicion that criminal activity was

being conducted at Palermo's Bar on May 26, 2003, based on the tip from the confidential

informant who had provided reliable tips to Officer Morris in the past.  Thus, the officers had

reasonable suspicion to stop defendant and to question him, and when he ran, they certainly had

probable cause to tackle him to further investigate.

An "'officer may, consistent with the Fourth Amendment, conduct a brief, investigatory

stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot.'

*Illinois v. Wardlow*, 528 U.S. 119, 123 (2000)."  *United States v. Williams*, 413 F.3d 347, 351

(3d Cir. 2005).  In *Terry v. Ohio*, 392 U.S. 1, 21 (1968), the Supreme Court first held that a

police officer may conduct a warrantless stop and frisk if specific and articulable facts, together

with all rational inferences, suggest that the suspect was involved in criminal activity. This investigatory stop is short of an arrest and can be justified by "less than the probable cause necessary for an arrest." *United States v. Roberson*, 90 F.3d 75, 77 (3d Cir. 1996). Although reasonable suspicion is less demanding than probable cause, the Fourth Amendment demands that an officer making a stop have some level of objective justification for that stop. *United States v. Sokolow*, 490 U.S. 1, 7 (1989).

In determining whether an officer's suspicion amounts to a reasonable suspicion, the court should consider the totality of the circumstances. *United States v. Cortez*, 449 U.S. 411, 417 (1981). Police officers are not limited to the bald facts that they observe, but may also make rational inferences from those facts. *Terry*, 392 U.S. at 21. Substantial deference must be given to the officer's inferences based on the officer's experience. *United States v. Brown*, 159 F.3d 147, 149 (3d Cir. 1998); *United States v. Rickus*, 737 F.2d 360, 365 (3d Cir. 1984) (*citing Cortez*, 449 U.S. at 418). A person's flight from a legitimate encounter with police officers supports an inference of criminal activity. *See United States v. Bonner*, 363 F.3d 213 (3d Cir. 2004) (flight from a non-consensual traffic stop gives rise to a reasonable suspicion justifying *Terry* stop).

"[T]he essence of all that has been written is that the totality of the circumstances – the whole picture – must be taken into account. Based upon that whole picture the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity." *Cortez*, 449 U.S. at 417-18. In determining "whether the detention is too long in duration to be justified as an investigatory stop, [it is] appropriate to examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their

suspicions quickly during which time it was necessary to detain the defendant." *United States v. Sharpe*, 470 U.S. 675, 686 (1985).

The totality of the circumstances gave Officers Morris and Pearl a particularized and objective basis for suspecting defendant of possessing narcotics at the Palermo bar on May 26, 2003. Officer Morris testified that ladies' restrooms are commonly used by drug dealers to sell narcotics because mostly male police officers are less likely to search a ladies' room during a raid. Upon witnessing a man accurately fitting the confidential informant's description exiting the ladies' bathroom at Palermo's, Officer Morris certainly had reasonable suspicion to conduct further investigation. Defendant consented to accompany Officers Pearl and Morris outside, wherein he admitted he was Kevin Bonner, the name given by the informant. When defendant swore at and ran from the officers, their suspicions justifiably grew, and it was reasonable to pursue and capture defendant at that point. They could legitimately have conducted a *Terry* pat-down at that point, but they did not have to, as defendant himself pulled the bag with crack cocaine out of his pocket after indicating he was dealing drugs, whereupon the officers had probable cause to arrest defendant. *United States v. Davis*, 461 F.2d 1026 (3d. Cir. 1972).

The Court finds defendant was not detained before he was tackled after running from police, but even assuming he was, the Supreme Court has not imposed any time limit on the duration of an investigatory detention in order "to allow authorities to graduate their responses to the demands of any particular situation." *United States v. Place*, 462 U.S. 696, 709 n.10 (1983). Once outside the bar, defendant was informed that information had been received that he was selling drugs inside the bar, and he was asked if he had any drugs on him. Upon being asked this question, defendant took flight. Based on all credible testimony, defendant was detained for only

a short time and was asked only two questions before he ran from the officers.  This interaction

between the officers and defendant was minimally intrusive.[1]

The Court will deny defendant's Motion to Suppress Evidence.

### III.    Motion to Compel Production of Confidential Informant (Document No. 33)

The Court also will deny defendant's motion to compel the government to produce the

identity of a confidential informant.  Defendant bases this motion on two grounds:

> 13.    The first involves the credibility of Mr. Morris, i.e., if there is no confidential
> informant, then Mr. Morris – who testified at length about her – is caught in a lie.  A lie
> which impeaches and taints the entire scope of his testimony and a lie which corroborates
> the entirely unsuspicious version of facts which Mr. Bonner presented . . .

> 14.    The second over-riding issue involves the alternative that Jane Doe exists and that
> she told Mr. Morris  – without having a basis in fact to say so – that Kevin Bonner was
> right then and there selling 50's in Palermo's.  If such an alternative is the case, then the
> tip was bereft of corroboration as Messrs. Morris and Pearl proceeded to act upon it . . .

Motion to Compel, at 7-8.

The government has a qualified privilege to refuse to disclose the identity of confidential

informants who have provided information about alleged criminal acts. *Rovario v. United States*,

353 U.S. 53, 59 (1957); *Pickel v. United States*, 746 F.2d 176, 181 (3d Cir. 1984). The privilege

recognizes that citizens have an obligation to report crime, and by preserving anonymity,

encourages them to carry out this obligation.  *Rovario*, 353 U.S. at 59.

In determining whether the privilege should be respected, a court must balance the public

---

[1]    Mr. Bonner does not raise any Fifth Amendment claims as to his statement that he was selling
drugs.  It would appear that these statements were volunteered by the Defendant and not solicited as a result of any
meaningful interrogation, and therefore are not subject to suppression. *See Rhode Island v. Innis*, 446 U.S. 291, 300
(1980).

interest in protecting the flow of information against the individual's right to prepare his defense. *Pickel*, 746 F.2d at 181. An individual seeking disclosure has the burden of establishing the significance of the informant's testimony. *United States v. Jiles*, 658 F.2d 194, 196-97 (3d Cir. 1981)

In *Jiles*, the United States Court of Appeals for the Third Circuit identified three typical scenarios for applying *Roviaro* test.  First, at one end of the spectrum, such as in *Roviaro*, is where the confidential informant played an active and crucial role in the events underlying the defendant's criminal liability.  Disclosure of the informant is often required in these cases to ensure a fair trial. *Id*.

Second, at the opposite end of the spectrum, is where the confidential informant was not an active participant or eyewitness but was only a "mere tipster."  Disclosure is generally not required in these cases. *Id*.

Third, where the informant's role falls between the two extremes described above, such as the confidential informant in *Jiles*, where the informant was an eyewitness but did not participate in the criminal activity, the balancing becomes more difficult to apply. *Id*.

Jane Doe was a "mere tipster."  She did not tell Officer Morris that she personally observed any deals going down in Palermo's,  nor did she claim to have actively participate in a drug transaction.   She did not identify the source of her information, but Officer Morris knew her to be relable from previous dealings with Jane Doe, who merely tipped Morris to the name, location and dress of a man that she believed to be selling crack in $50 dollar units.

Defendant asserts that since testimony from Ms. Schuler corroborates that no woman

called from a pay phone inside Palermo's Bar during the time period defendant was inside, and

since the testimony also established that no woman exited the bar during the time he was inside,

no woman could have known, let alone said to Officer Morris at a few minutes before 6:50 pm

on May 26, 2004, that defendant was selling drugs inside of Palermo's.  However, the Court

finds, based upon Officer Morris' and Pearl's testimony, that the confidential informant never

said she was in the bar and saw Kevin Bonner dealing drugs.  She certainly could have come by

that information from another source, such as a friend or acquaintance who "scored" in

Palermo's earlier or otherwise knew he would be dealing drugs there at that time.

Even assuming Defendant's contention that the tip received from Jane Doe was "bereft of

corroboration as Messrs. Morris and Pearl proceeded to act upon it," Officers Morris and Pearl

lawfully entered a bar that was open for business to the public.  Mr. Bonner was not arrested or

searched based only on the informant's tip, but was simply asked to confirm his identity and to

accompany the officers outside, which he did voluntarily.  Defendant's actions once outside of

the bar supplied the probable cause for the officers to tackle defendant and arrest him when they

saw the bag of suspected crack.

In *Rovario*, the informer was the sole participant other than the accused in the transaction

charged and was the only witness.  *Rovario,* 353 U.S. at 64-65.  The court in *Jiles* found that

even where the informant could provide exculpatory information as an eyewitness, the identity of

the informant could remain undisclosed due to the risk of harm to the informant.  *Jiles*, 658 U.S.

at 197.  In this case, Jane Doe is not even an eyewitness to the crime; she is a mere tipster, and as

such, her identity does not have to be revealed.

Defendant claims that the identity of the informant must be revealed because if no such informant exists, Officer Morris is impeached and defendant's "entirely unsuspicious" version of facts will be proven.  Only when the disclosure of an informer's identity is relevant to an accused, or is essential to a fair determination of a cause, does the informant's privilege give way.  *Jiles*, 658 F.2d at 196.  Officer Morris related the relevant facts about defendant to Officer Pearl in the moments before they encountered defendant inside Palermo's Bar.  It is unlikely that he could have correctly predicted defendant's location, hairstyle, dress, and illegal items on his person without the help of a confidential informant.  Officer Morris' actions leading up to defendant's arrest are either those of an officer dutifully responding to a tip about criminal activity or he is clairvoyant.  The Court finds that Officer Morris was, indeed, acting on a tip from an informant he found reliable in the past, and defendant's motion to compel must be denied.

For the foregoing reasons,

**IT IS HEREBY ORDERED** that defendant's motion to suppress (Document No. 26) is **DENIED.  IT IS FURTHER ORDERED** that defendant's motion to compel (Document No. 33) is **DENIED**.

SO ORDERED, this 12th day of January, 2006

s/Arthur J. Schwab
Arthur J. Schwab
United States District Judge

cc:     All counsel of record

9

Margaret E. Picking, Esquire
United States Attorney's Office


Thomas Livingston, Esquire
Federal Public Defender's Office


United States Marshal Office
United States Probation Office